**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

SANAA FAHIM, §
Plaintiff, §
§
v. § CIVIL ACTION NO. H-06-4035
§
MARRIOTT HOTEL SERVICES, INC., §
Defendant. §

## MEMORANDUM AND ORDER

In this case regarding discrimination in public accommodations, Defendant Marriott Hotel Services, Inc. ("Defendant" or "Marriott") has filed a Motion for Summary Judgment [Doc. # 20] ("MSJ" or "Motion"), Plaintiff has responded [Doc. # 28], and Defendant has replied [Doc. # 31].[1] Having considered the parties' briefing, applicable legal authorities, and all matters of record, the Court concludes that the Motion should be **granted**.

## I. BACKGROUND

Plaintiff Sanaa Fahim is a United States citizen who was born in Egypt and currently lives in Arizona. She is Muslim and has "light brown" skin. She speaks

[1] On January 23, 2008, the Court granted Defendant's unopposed motion to correct Defendant's name in this case. Defendant is Marriott Hotel Services, Inc. *See* Order [Doc. # 21].

Arabic, English, and French.

In August 2006, Plaintiff traveled to Egypt for a three-week vacation. Her return flight had three legs: Cairo-Paris, Paris-Houston, and Houston-Phoenix. On August 22, 2006, Plaintiff arrived in Houston on an Air France flight from Paris. She was scheduled to travel from Houston to Phoenix that same day but, because the flight from Paris was delayed, she missed her connecting flight to Phoenix.

Because Plaintiff would not be able to travel to Phoenix until the next day, Air France employees worked to locate available hotel rooms near the airport for Plaintiff and other distressed passengers. At the request of an Air France employee, Plaintiff agreed to assist another distressed passenger who spoke only Arabic. The passenger, who was a stranger to Plaintiff, was a young woman in her 20s wearing jeans and a hijab (head scarf). Plaintiff's hair was covered by a bandana.

Plaintiff states that, when an Air France employee called the Marriott hotel near the airport, he was told that two rooms were available at the Marriott. The Air France employee issued Plaintiff a voucher for a hotel room, dinner, and breakfast. The other woman also was issued a voucher. The two women then proceeded together to the Marriott.

When Plaintiff arrived at the Marriott, approximately fifteen minutes later, there were five hotel desk agents, each of whom had about four people in line. Plaintiff

waited about five minutes before being assisted by Marriott staff. Plaintiff states that she was helped by a man with "blond, sandy hair"[2] who, at first, was "very courteous" to her. Plaintiff presented her passport and her Air France voucher, and the man started to assist her. Plaintiff then directed his attention to the other passenger accompanying her and asked the Marriott employee to assist her as well, explaining that the other woman did not speak English. At that point, according to Plaintiff, "all hell broke loose."[3] At her deposition, Plaintiff gave the following description:

> Q. . . . And during the part where [the Marriott employee] was working in some manner, you raised at him the idea of helping the person behind you because she doesn't speak English?
> A. With a room, yes.
> Q. Okay. And what did he say at that point?
> A. I don't know how to do it where she can actually write it, but it went a comical script.
> Q. Okay. Let's take it one step by one step.
> A. Okay. He raised his head.
> Q. Okay.
> A. And all of a sudden he looked at her and at me; and his whole face, his whole demeanor changed. He took on another kind of face and he [waved] his two fingers at me and he said, "You have to go back."
> I have never been [so] shocked in my life.

---

2 Plaintiff's Deposition (Exhibit A to MSJ), at 46-47. Defendant insists that no employee on duty that evening matches Plaintiff's description, and maintains that Plaintiff was assisted by Fernando Aguirre. Plaintiff argues in detail about Aguirre's work schedule and physical characteristics in an attempt to establish that another employee, and not Aguirre, assisted Plaintiff. Response, at 10-12 & nn. 9-11. On summary judgment, the Court accepts Plaintiff's version of the facts; this issue, however, is not dispositive of the summary judgment motion.

3 Plaintiff's Deposition, at 50.

*  *  *  *

Q. I'm asking you what was said. He pointed to you—
A. He said—no, he did not point. He [waved] me out. "You have to go back."
Q. Okay. Did he say anything else?
A. I said, "I beg your pardon?"
Q. The question is, did he say anything else?
A. First he [waved] me—see you're trying to get something organized.
Q. Yes.
A. Okay. It was not like that.
Q. I'm trying to—
A. He did not say anything else until I said something again.
Q. Fine. What's—what then did you say?
A. I said, "I beg your pardon? Go where?"
Q. Okay. And what did he say?
A. "Go back to the airport."
Q. Okay. Did he say anything else?
A. "We are too" —he—now he is shushing down. "We are no longer accepting Air France vouchers."[4]

Plaintiff further testified that, as she continued to question the Marriott employee, he stated "We are no longer accepting those cheap rooms for Air France," and "We have no rooms."[5] When Plaintiff offered to pay for a room, he said "I don't have rooms."[6] Plaintiff, after attempting to call Air France and complaining to Marriott employees in a "raised voice," decided to return to the airport.[7] The other woman, who was then

---

4 *Id.* at 55-57.

5 *Id.* at 57-58.

6 *Id.* at 58.

7 *Id.* at 59-65.

talking on the telephone with a relative, did not return to the airport with Plaintiff.

As Plaintiff walked to the hotel elevator, the Marriott employee came after her and apologized that Marriott did not have "rooms for Air France."[8] Plaintiff again offered to pay for a room, and he stated that he did not have rooms. When Plaintiff asked why others were still in line at the hotel desk, she was told that those in line had reservations.[9]

Upon Plaintiff's return to the airport, Air France employees again assisted her, and issued her a voucher for the Quality Inn. Plaintiff states that an Air France employee, named Crystal, expressed surprise that Plaintiff had not received a Marriott room, stating, "That can't happen. We booked a room for you."[10] By this time, the woman Plaintiff had assisted also had returned to the airport, and she also received a Quality Inn voucher. However, because the other woman elected not to go to the Quality Inn, the two women separated and Plaintiff never saw her again.[11] About an hour later, the woman in the hijab returned to the Marriott and was given a room, after

---

8 *Id.* at 67.

9 *Id.* at 67-68.

10 *Id.* at 71.

11 *Id.* at 70-72.

cancellations had made additional rooms available.[12]

Plaintiff proceeded to the Quality Inn and spent the night there. The next day, Plaintiff flew to Arizona.[13]

On December 21, 2006, Plaintiff filed this lawsuit, alleging discrimination on the basis of her religion (Muslim) and color, in violation of Title II of the Civil Rights Act of 1964, as amended. *See* 42 U.S.C. § 2000a. On October 22, 2007, this Court dismissed Plaintiff's claims for compensatory and exemplary damages, because such damages are not recoverable under Title II, and denied Plaintiff's belated request for leave to amend her complaint. *See* Memorandum and Order [Doc. # 18].

When asked at deposition about the basis of her discrimination suit, Plaintiff stated "[w]e did not look right for the part of the Marriott," and that "everybody in America knows what a head scarf is."[14] She further stated:

> My experience in life taught me to watch body language; and when somebody is very nice when his head was down and he called me and addressed me with "Hi, ma'am, how are you, ma'am," and all of a sudden when I point to a girl behind me who is wearing the Muslim head

---

[12] *Id.* at 109-10; Deposition of Fernando Aguirre (Exhibit B to MSJ), at 48-49.

[13] Once home, Plaintiff called the Marriott to complain, and spoke to a manager, Mr. Solovay. Mr. Solovay told Plaintiff that the hotel does not profile, and said that he would check their surveillance cameras. Approximately a week later, Mr. Solovay called Plaintiff back and told her that his review had revealed no wrongdoing. Plaintiff's Deposition, at 73-77. Plaintiff also wrote a letter of complaint to Marriott, and received a response. *Id.* at 77-79.

[14] *Id.* at 81.

> scarf, hijab, and his face changes, that tells me that he is discriminating.[15]

Plaintiff also stated, when asked for evidence that she was discriminated against because of her religion,

> Could be the religion, the way that I looked, he didn't like me, he didn't like my appear[ance]. I don't know. He was giving rooms to other people in the line.[16]

Asked if she had any additional evidence of discrimination, Plaintiff answered that she did not.[17]

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002). In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions,

---

15 *Id.* at 85.

16 *Id.* at 87.

17 *Id.* at 88.

answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party" *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Affidavits cannot preclude summary judgment unless they contain competent

and otherwise admissible evidence. *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted).

## III. ANALYSIS

Title II of the Civil Rights Act of 1964 prohibits discrimination in public accommodations:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

42 U.S.C. § 2000a(a); *Heart of Atlanta Motel, Inc. v. U.S.*, 379 U.S. 241 (1964).

Because case law interpreting Title II is scarce, and because allegations under

Title II often are similar to allegations of employment discrimination under Title VII, courts have applied Title VII authority—specifically, the *McDonnell Douglas* burden-shifting paradigm—to Title II cases. *Lizardo v. Denny's, Inc.*, 270 F.3d 94 (2d Cir. 2001); *United States v. Lansdowne Swim Club*, 894 F.2d 83, 88 & n.7 (3d Cir. 1990); *Hornick v. Noyes*, 708 F.2d 321, 324-25 n.8 (7th Cir. 1983), *cert. denied*, 465 U.S. 1031 (1984); *Bivins v. Wrap it Up, Inc.*, 2007 WL 3047122 *4 (S.D. Fla. Oct. 18, 2007); *Benton v. Cousins Props., Inc.*, 230 F. Supp. 2d 1351, 1382 (N.D. Ga. 2002), *aff'd*, 97 F. App'x 904 (11th Cir. 2004).

Plaintiff has not presented direct evidence of discrimination.[18] The Court therefore applies the *McDonnell Douglas* framework for circumstantial evidence:

> Under the modified *McDonnell Douglas* approach, the plaintiff must first demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to [deny services to] the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either (1) the [defendant's] reason is a pretext or (2) that the [defendant's] reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic.

*Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411-12 (5th Cir.

---

18 *See Rachid v. Jack-in-the-Box*, 376 F.3d 305, 310 (5th Cir. 2004) ("Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption") (internal citation and quotation marks omitted). Plaintiff does not allege that Defendant or any of its employees used racial or religious slurs or that there was any other incident specifically connected to her race or religion.

2007).

**A. *Prima Facie* Case**

The Fifth Circuit has not adopted a *prima facie* test for Title II cases. Many courts, when articulating *prima facie* elements for a Title II case, have directly applied the elements applicable to employment discrimination cases—in other words, the Title VII elements. *See Lansdowne Swim Club*, 894 F.2d at 88 & n.7; *Hornick*, 708 F.2d at 325 & n.8 (7th Cir. 1983); *Benton*, 230 F. Supp. 2d at 1382. Under this formulation, to establish a *prima facie* case of discrimination, Plaintiff must show the following: (1) she is a member of a protected class; (2) she attempted to contract for services and afford herself the full benefits and enjoyment of a public accommodation; (3) she was denied the full benefits or enjoyments of a public accommodation; and (4) such services were available to similarly situated persons outside her protected class who received full benefits or who were treated better than she was. *Benton*, 230 F. Supp. 2d at 1382. Fifth Circuit cases laying out the requirements of a *prima facie* case in the Title VII context articulate similar elements.[19]

The Court assumes, and Defendant does not contest, that the first three elements

---

19 *See, e.g.*, *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (a *prima facie* case of discrimination "requires a showing that the plaintiff (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group").

of Plaintiff's *prima facie* case are satisfied. Plaintiff belongs to a protected class because of her race and religion; she attempted to contract for the benefits of a public accommodation, specifically, a room at the Marriott; and was denied the privileges and benefits of the public accommodation when she was told no rooms were available for passengers with Air France vouchers.

On the fourth prong, however, Plaintiff's *prima facie* case fails, because she has produced no probative evidence of a similarly-situated person outside her protected class who received a room. In this case, because the comparator must be outside the protected class, the person must be either non-Muslim or not brown-skinned, or both. Further, in order to be "similarly situated" to Plaintiff, the person must have arrived at the Marriott without a reservation and requested a room simultaneously with, or shortly after, Plaintiff. *See Perez v. Tex. Dep't of Crim. Justice, Institutional Div.*, 395 F.3d 206, 213 (5th Cir. 2004), *cert. denied*, 546 U.S. 976 (2005) (circumstances must have been "nearly identical" for a comparator to qualify as "similarly situated").

Plaintiff's briefing does not specifically identify a comparator, although she makes general argument about other Air France passengers who presented vouchers at the Marriott that night.[20] In her deposition testimony, Plaintiff alleged that two men

[20] *See* Response, at 23. Plaintiff's purported comparison to "other Air France passengers" also fails because it rests on the assumption that Plaintiff had a reservation. *Id.* ("Fahim was like other Air France passengers—she possessed a reservation and sought accommodation"). (continued...)

who appeared to be Asian presented Air France vouchers and received

---

[20] (...continued)
Plaintiff, of course, bears the burden to show that she in fact possessed a reservation, as opposed to merely a voucher for payment; she has not done so. Instead, Plaintiff insists that her voucher—issued by Air France—equalled a Marriott reservation. Response, at 4 n.4 ("As an experienced traveler, Plaintiff understood a voucher to represent a reservation."). Defendant has presented the testimony of Marriott's front desk supervisor, who explained that a reservation, which guarantees a room at the hotel, must be made through the Marriott reservations system, requires a credit card, and results in issuance of a confirmation number. MSJ, at 8-9 (citing Deposition of Fernando Aguirre (Exhibit B to MSJ), at 35). By contrast, a voucher, which is issued by Air France, does not guarantee a room at the Marriott, but only guarantees payment by Air France. *Id*.

Plaintiff's bald assertion in her deposition is insufficient to establish that an Air France voucher amounted to a Marriott reservation. *See Morris*, 144 F.3d at 380. Similarly, Plaintiff's proffered affidavit—even setting aside the evidentiary concerns listed in Defendant's Reply, at 8—could establish, at most, that *Air France* employees had assured her a room at the Marriott; this affidavit does not establish that Plaintiff had a formal reservation in the Marriott system. *See* Affidavit of Sanaa Fahim (Exhibit K to Response).

Plaintiff further argues that Marriott's position that "the voucher is not a reservation" in fact is "not supported by the hotel's internal documents." Response, at 14. The Response then discusses Marriott's Occupancy Reports for 8/21/06 and 8/22/06 (Exhibits N and O to Response), but does not explain how these establish that a voucher is the same as a reservation. To be sure, the reports reflect a reservation number for everyone who received a room at the hotel, and shows that some persons who received rooms were distressed passengers, as revealed by the "market codes." This, however, does not establish that a voucher is a reservation, nor does it establish that other persons truly similarly situated to Plaintiff received rooms at, or just after, the time Plaintiff requested the room. Arrival times are not noted on the report.

Plaintiff also cites to copies of vouchers issued on various days throughout August 2006 by Air France for rooms and meals at the Marriott, pointing out that some vouchers have reservation numbers written on them, and that the reservation number is then tracked in Marriott's Occupancy Report. *See, e.g.,* Air France Vouchers (Exhibit P to Response), at 0043 (reservation # 4464 assigned to a passenger); Marriott Occupancy Report (Exhibit N to Response), at 0010 (reservation # 4464 assigned to Room # 1111). Again, this does not establish that Plaintiff's voucher guaranteed her a room, nor that other similarly situated persons received rooms. It merely shows that some distressed Air France passengers were issued reservations and rooms at the Marriott. If anything, this evidence underscores that a voucher and a reservation are *not* identical.

accommodations at the Marriott.[21] However, Plaintiff further testified that the men arrived at the hotel before she did, and received accommodations before she presented her voucher at the front desk.[22] Under *Perez*, this conceded difference in arrival time makes these two men invalid as comparators.

Because she has failed to satisfy the fourth prong, Plaintiff cannot establish a *prima facie* case, and her Title II claim fails.[23]

---

[21] Plaintiff's Deposition, at 40, 42-44.

[22] *Id*.

[23] Some courts, when considering cases under Title II or 42 U.S.C. § 1981 in the customer service context, have modified the *prima facie* elements to provide an alternative to the "similarly situated" requirement. *See Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001) (citing *Callwood v. Dave & Buster's, Inc.*, 98 F. Supp. 2d 694 (D. Md. 2000)).

> In a § 1981 commercial establishment case, a plaintiff must prove: (1) plaintiff is a member of a protected class; (2) plaintiff sought to make or enforce a contract for services ordinarily provided by the defendant; and (3) plaintiff was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not *and/or* (b) *plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory*.

*Christian*, 252 F.3d at 872 (emphasis added); *Bivins*, 2007 WL 3047122 *6. The "markedly hostile" prong has been questioned and criticized by multiple courts. *See Lizardo v. Denny's, Inc.*, 270 F.3d 94, 102 & n.2 (2d Cir. 2001); *Robinson v. Paragon Foods, Inc.*, 2006 WL 2661110 *5 n.2 (N.D. Ga. Sept. 15, 2006) (gathering cases); *Watkins v. Lovley Development, Inc.*, 2005 WL 2746664 *8 n.8 (D. Me. Oct. 24, 2005) (gathering cases). Neither party has expressly argued that this alternate test applies.

Under the alternative test in *Christian*, assuming *arguendo* that it applies to this case, and viewing all facts in the light most favorable to Plaintiff, a fact question exists as to

(continued...)

### B. Marriott's Proffered Nondiscriminatory Reason and Plaintiff's Rebuttal

As an alternative ground, the Court addresses the second and third stages of the *McDonnell Douglas* burden-shifting paradigm.

Defendant has proffered a non-discriminatory reason for not furnishing Plaintiff a room on the night in question: At the time Plaintiff arrived at the front desk and requested a room, no rooms were available. Defendant cites to an MOD [Manager on Duty] Report, dated August 22, 2006 and time-stamped 11:48 p.m., which projects 100% occupancy for the night:

> At the end of the shift [approximately 11:30 p.m.] we still have 45 check ins, projecting 485 rooms occupied yielding 100% with 77 rooms on [vacant maintenance].[24]

Because Marriott has satisfied its burden of production, the summary judgment burden shifts back to Plaintiff to establish evidence of intentional discrimination. Plaintiff must offer evidence that either (1) Marriott's reason is not true, but instead is a pretext

---

23 (...continued)
Defendant's "marked hostility." Plaintiff has testified that the Marriott agent became hostile after she indicated that she was accompanied by the woman in the hijab. However, as discussed in the next section of this Memorandum, Plaintiff has not demonstrated existence of a fact question on her ultimate burden, to show intentional discrimination through pretext or mixed motive.

24 *See* MOD Report, 8/22/06 11:48 p.m. (Exhibit 2 to Reply). Marriott employees explained in deposition that "vacant maintenance" refers to rooms that require maintenance or renovation and are not fit to be sold. Favoriti Deposition (Exhibit L to Response), at 20; Soloway Deposition (Exhibit D to Response), at 27.

for illegal discrimination, or that (2) Marriott's reason, while true, is only one reason for its action, and another "motivating factor" was Plaintiff's race or religion.[25]

Plaintiff contests Marriott's evidence that the hotel was "full" when she presented her Air France voucher, citing to various depositions and documents about Marriott's occupancy on the night in question. None of Plaintiff's evidence, however, supports her argument that Marriott actually had rooms available for rent when she arrived and presented her Air France voucher.[26] Because her evidence fails to demonstrate a fact question regarding the falsity of Marriott's explanation, Plaintiff

---

[25] *Burrell*, 482 F.3d at 411-12; *Rachid*, 376 F.3d at 312.

[26] Plaintiff directs the Court's attention to a previous paragraph in the MOD report, which states:

> Once again started the shift with 237 check ins, 359 rooms available 91 on [vacant maintenance] for renovation, 35 on the Continental block, projecting 433 rooms occupied yielding 91% occupancy.

MOD Report, 8/22/2006 (Exhibit 2 to Reply). Plaintiff attaches great importance to this sentence, arguing that it demonstrates that 31 rooms were available, and citing to depositions discussing the sentence. *See* Response, at 10 (citing Soloway Deposition (Exhibit D to Response), at 27-28); *id*. at 12 (citing Favoriti Deposition (Exhibit L to Response), at 10-11). However, this sentence plainly states, and the depositions confirm without contradiction, that these figures refer to occupancy at the beginning of Mr. Favoriti's shift, or approximately 3:30 p.m. on August 22d. Read in its entirety and in context of testimony by the witnesses with knowledge of the Marriott procedures, the MOD Report states that, due to the weather, demand was higher than initially expected, that some rooms on "vacant maintenance" were opened to customers, and that at 11:48 p.m., Marriott was projecting 100% occupancy if all customers with reservations used their rooms. Plaintiff has offered no evidence that other rooms on "vacant maintenance" were usable and should have been made available to her, nor has she offered any other evidence that Marriott rooms were actually available at times pertinent to her claims.

has not demonstrated a genuine fact issue that the explanation was a pretext for discrimination.[27]

Plaintiff's evidence also fails to demonstrate existence of a genuine fact question that her race or religion was a "motivating factor" for Defendant's action. Plaintiff inferred discrimination from the desk agent's "body language" and the fact that his "face change[d]" when she gestured to the woman in the hijab; she testified at deposition that she had no further evidence of discrimination.[28] This evidence, which amounts to Plaintiff's subjective, unilateral opinion, does not satisfy her burden to show that Defendant's action was motivated by illegal discrimination. Significantly, Defendant presented uncontroverted evidence that, sixty to ninety minutes after Plaintiff was denied a room, the woman in the hijab, that is, a person of the same race and religion as Plaintiff—or at least a person who appeared so—returned to the Marriott and in fact received a room.[29] This evidence, in combination with the weakness of Plaintiff's other evidence, demonstrates that Plaintiff has at best a scintilla of evidence to support her claim, which is insufficient to support a jury

---

27 *See Hanchey v. Energas Co.*, 925 F.2d 96, 98 (5th Cir. 1990) (a showing that the proffered non-discriminatory reason is false "must extend beyond casting doubt on the reasonableness of the [defendant's] action; otherwise, the law would be converted to a 'just cause' provision for the protected class of [plaintiffs], an effect that Congress clearly did not intend").

28 Plaintiff's Deposition, at 85-88.

29 Aguirre Deposition (Exhibit B to MSJ), at 47-49.

verdict in her favor.[30] Plaintiff's subjective belief that she was discriminated against cannot preclude summary judgment.[31] Plaintiff has failed to demonstrate a genuine issue of material fact that Defendant intentionally discriminated against her.

## IV. CONCLUSION

For all of the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 20] is **GRANTED**. A separate final judgment will issue.

SIGNED at Houston, Texas, this **22nd** day of **April, 2008**.

Nancy F. Atlas
United States District Judge

---

[30] *See Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) ("[a]ll reasonable inferences are drawn in favor of the nonmoving party, but the nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" (internal citations and quotation marks omitted)).

[31] *Price v. Marathon Cheese Co.*, 119 F.3d 330, 337 (5th Cir. 1997); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).